CONCERNED DEMOCRATS OF FLORI-DA and Edward Cohen, President of Concerned Democrats, Plaintiffs,

v.

Janet RENO, State Attorney of Dade County, Florida and Robert Shevin, Attorney General of Florida, Defendants.

No. 78–3994–Civ–NCR.

United States District Court,
S. D. Florida,
Ft. Lauderdale Division.

March 26, 1980.

Steven Wisotsky, Nova University Center for Study of Law, Fort Lauderdale, Fla., for plaintiffs.

Calvin L. Fox, Asst. Atty. Gen., Miami, Fla. for the State of Florida.

## ORDER

ROETTGER, District Judge.

This cause is before the court on order of remand from the Fifth Circuit Court of Appeals for a finding on and statement of any special circumstances which would render an award of attorney's fees in this case unjust. *Concerned Democrats of Florida v. Reno,* 601 F.2d 891 (5th Cir. 1979). Previously this court had ruled that such an award would be "inappropriate". Concerned Democrats—or its counsel—appealed that sole issue. Defendants—not wanting to imperil the treasury of the taxpayers— did not appeal the case on the merits but defendants have contested the award of attorneys' fees.

Plaintiffs without question prevailed on the substantive issues in this case. *Concerned Democrats of Florida v. Reno,* 458 F.Supp. 60 (S.D.Fla.1978). Defendants have been permanently enjoined from enforcing Fla.Stat. § 105.09, and plaintiffs have acquired the primary relief sought. They were successful on the central issue, i.e., the constitutionality of the challenged statute. *Iranian Students Association v. Edwards,* 604 F.2d 352 (5th Cir. 1979)[1].

---

1. There plaintiffs sought and obtained a temporary restraining order which enjoined defendants from interfering with plaintiffs' planned demonstrations, from enforcing the State's

The statute governing the remaining issue in this case, 42 U.S.C.A. § 1988, states in plain language that "the court, in its discretion, may allow the prevailing party . . a reasonable attorney's fee as part of the costs."

 That statute's intended purpose is as clear as its language: It is that " . . . the court, *in its discretion*, may . . . " (emphasis supplied) compensate prevailing parties in suits to enforce the civil rights acts passed by Congress since 1866. Legislative History S.Rep. No. 94–1011, 94th Cong.2d Sess. (1976) reprinted in [1976] *U.S. Code Cong. & Admin. News*, p. 5908 at 5909–5910. As stated in the Senate Report, "In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws." *Id.* Congress enacted the Attorney's Fees Awards Act to ensure vigorous enforcement of civil rights statutes, and to further policies underlying those statutes.

 The legislative history also makes it clear that the governing standards are to be the same as under the fee provisions of the Civil Rights Act of 1964. A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).[2]

Following the Supreme Court's language in *Newman, supra*, the Fifth Circuit has continually awarded fees to prevailing parties. The enunciated standard is identical. "A prevailing party should ordinarily recover an attorney's fee unless special circumstances render such an award unjust." *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978).

A review of controlling Fifth Circuit authority indicates that "special circumstances" have yet to be defined in this circuit. The court has specifically rejected that either good faith on the part of defendants or a finding of unintentional discrimination rise to the level of special circumstances. *Id.* citing *Gates v. Collier*, 559 F.2d 241 (5th Cir. 1977); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977). Likewise a plaintiff's financial ability to pay for counsel is not a special circumstance. *International Society for Krishna Consciousness v. Collins*, 609 F.2d 151 (5th Cir. 1980). As stated by the Fifth Circuit, all that is necessary is "the existence of an attorney-client relationship, a status that exists wholly independent of compensation, . . . . Congress did not intend that vindication of statutorily guaranteed rights would depend on the private party's economic resources or on the availability of free legal assistance." *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). A defendant's good faith belief that a challenged statute is valid is not a special circumstance. *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979). Nor is it permissible to deny an award so that its burden will not fall on the taxpayers of a state. *Id.*

It also seems that apparently relevant considerations which have justified the denial of attorney's fees in a previous case are no longer viable. *Henderson v. Fort Worth Independent School District*, 574 F.2d 1210 (5th Cir.) *vacated*, 584 F.2d 115 (5th Cir. 1978). In *Henderson* the Fifth Circuit panel had affirmed as not an abuse of discretion the trial judge's reliance on such factors as: (1) No indication that the challenged statute was "inspired by a desire to discriminate against any race, sex, or religion, or any other homogenous segment of

bonding requirements and its prohibition against amplification. Thereafter the controversy was settled by a consent decree. *See also, Criterion Club of Albany v. Board of Commissioners*, 594 F.2d 118 (5th Cir. 1979) (Settlement agreement which precipitated remedial legislation could support determination that plaintiff had prevailed.)

2. The court finds it significant that the precise language of the prevailing "test" originated in a case before the Supreme Court involving blatant racial discrimination on the part of several restaurants and sandwich shops against Negro plaintiffs.

society." *Id.* at 1213. (2) Enforcement of the statute (which required a candidate for a school board seat to have been a qualified voter in the district for a period of three years) was mandatory, and the defendant's compliance with court order was immediate. (3) The burden of an award would fall on taxpayers. However, since that panel opinion in *Henderson* was vacated by an evenly divided en banc court of appeals, all district courts that have relied on its reasoning have been reversed. *See, e. g., Johnson v. Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Iranian Students Association v. Edwards*, 604 F.2d 352 (5th Cir. 1979); *Criterion Club of Albany v. Board of Commissioners of Dougherty County*, 594 F.2d 118 (5th Cir. 1979). In all cases, it was also pointed out that the district judges' reliance on *Henderson* was misplaced because it was specifically declared by the en banc court to have no precedential value. *Henderson v. Fort Worth Independent School District*, 584 F.2d at 116.

In considering the facts and circumstances of this case, the court is still of the opinion that an award of attorney's fees is inappropriate. If the attorney's fee statute is to mean anything resembling what its words indicate, and if the judicially created exception "special circumstances" is to have any life at all, then the court must deny plaintiff's motion in this case.

The Florida statute in question served the salutary purpose of trying to preserve the apolitical nature of this state's judicial elections. It was passed in furtherance of a permissible governmental objective. Its defect was that it swept too broadly. The statute did not discriminate against any particular group, and did not remotely involve discrimination based on sex, race or religion. It certainly did not target any group, which could be characterized as deprived or under-privileged. These observations are not meant to minimize the importance of fundamental first amendment rights in a democratic society, but to put in perspective the state's interest in proscribing political endorsements in judicial elections.

■ The court is well aware that bad faith on defendant's part is not a requisite finding prior to an award of attorney's fees. However, in determining whether a "special circumstance" exists which would render an award "unjust", it seems impossible that a good faith/bad faith determination could be deemed *totally* irrelevant and receive *no* consideration. It clearly has to figure in somewhere if the ultimate decision is, as the statute says, discretionary.

The court also concludes that factual findings about plaintiffs can be relevant factors to consider. There are obvious distinctions between plaintiffs in this case: a political group of about 4,000 members, self-described as liberal Democrats, who are interested in screening and endorsing those candidates for judicial office who are compatible with the group's political philosophy, and the following plaintiffs: blacks who were systematically excluded from employment with the Mississippi Highway Patrol, *Morrow v. Dillard, supra*; students whose entitlement to free transportation to and from school depended on whether they resided outside a municipality's corporate limits, *Johnson v. Mississippi, supra*; blacks who were denied rentals in an apartment complex, *Gore v. Turner, supra*; a black who was refused a rental in an apartment complex, *Bunn v. Central Realty of Louisiana*, 592 F.2d 891 (5th Cir. 1979); blacks who were denied opportunity to buy in a residential development, *Dillon v. AFBIC Development Corp.*, 597 F.2d 556 (5th Cir. 1979); blacks who were effectively precluded from being elected, by a county's at-large majority vote system, to county commission, *Criterion Club of Albany v. Board of Commissioners of Dougherty County, supra*.

More closely related to plaintiffs in this case, though still distinguishable, are those who brought suit in *International Society for Krishna Consciousness, supra*, i.e., a religious group seeking to vindicate their right to pass out handbills in an airport facility, and in *Iranian Students Association, supra*, i.e. a student group who sought relief from a state requirement that a bond be posted

before a planned demonstration and from a state prohibition against voice amplification. In both cases, plaintiffs' proposed conduct was to be totally thwarted by statutes whose unconstitutionality was more clear than the one at issue, and whose purposes were less laudable.

As is evident from the survey of cases above, this is not a case involving a member of a racial minority, typically deprived economically, politically and educationally suing to right injustices that have existed for decades. Instead, this is a group of informed, politically partisan and active citizens who desire to make their preferences for judicial candidates known. In fact, plaintiff had to establish it was a valid and recognized partisan political organization before it had standing. 458 F.Supp. at 62 n.2.

As with the good faith/bad faith consideration, the court acknowledged that a finding of "special circumstances" cannot be based solely on plaintiff's ability to pay. However, to make a discretionary finding that an award would be "unjust", the court must be free at least to consider plaintiff's financial position, as well as its stake in the lawsuit in relation to defendants. The court must assume that a group 4,000 members strong, whose prime purpose is to screen candidates and publish endorsements, could certainly pay for their own counsel. Likewise, the court must note that such a group could certainly not be considered to be politically, economically or educationally deprived. They are not the typical victims of unconstitutional actions contemplated by the drafters of 42 U.S.C.A. § 1988. Further, the court is not convinced that the statute attacked was of a type envisioned by that same Congress.

Finally, the court notes that in granting a temporary injunction in this case, it found plaintiffs to have met their burden on the issue of public benefit primarily on the strength of their evidence relating to other factors. Because of the state's interest in preserving the non-partisan nature of judicial elections, the court felt that plaintiff's showing of public good from the publication of political endorsements was weak, although barely sufficient. The court stated at that time: "This factor is troublesome because there is an obvious interest to both the public and Legislature in having judicial candidates free of the appearance of impropriety. An appearance of partisanship will hardly foster public confidence in the courts. However, the court feels constrained under cases discussed [earlier].

"The strength of the first two factors compensates for the weakness in the fourth factor." 458 F.Supp. at 65 citing *Knights of K.K.K., Realm of Louisiana v. East Baton Rouge Parish School Board*, 578 F.2d 1122 (5th Cir. 1978).

■ The Fifth Circuit has rejected (1) good faith on the part of defendants; (2) a finding of unintentional discrimination; (3) plaintiff's financial ability to pay counsel fees; (4) defendant's good-faith belief that a challenged statute is valid; and (5) that the burden of a fee award will fall on the taxpayers, as insufficient to constitute special circumstances rendering an award of attorney's fees unjust. However, this case combines all five of these factors with the added ingredient of a plaintiff who is a partisan, political organization. Added together they rise to the level of "special circumstances".

Accordingly, the court finds an award of attorney's fees in this case to be unjust, and it is hereby

ORDERED AND ADJUDGED that plaintiff's motion for attorney's fees is denied.